**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **LAURA CHEEZUM,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civ. No. MJM-25-3432** |
| **VIVID SEATS, INC., et al.,** | * | |
| **Defendants.** | * | |

* * * * * * * * * * *

**PLAINTIFF'S MOTION FOR LEAVE TO FILE**
**<u>FIRST AMENDED CLASS ACTION COMPLAINT</u>**

Plaintiff Laura Cheezum ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 15(a)(2), Local Rule 103.6, and paragraph 6 of the Court's September 28, 2026 Memorandum Opinion and Order (ECF No. 24) (the "Opinion"), respectfully moves for leave to file the First Amended Class Action Complaint ("FAC") attached as **Exhibit A**.[1]

On October 13, 2026, Plaintiff moved for partial reconsideration of the Opinion. ECF No. 25 (the "Motion for Reconsideration"). As Plaintiff explained there, she filed that motion in an abundance of caution in the event leave to amend is not granted. *Id.* at 2 n.1. This motion is the primary vehicle for the relief Plaintiff seeks. The FAC responds directly to each deficiency the Opinion identified, and it adds two claims the original Complaint did not plead.

Specifically, the FAC (1) pleads the facts the Court found missing on reliance and injury, including what Plaintiff would have done had Vivid Seats disclosed the total price at the outset; (2) adds Count IV, a stand-alone claim for Vivid Seats' "Electronic Transfer" fee, a charge for a transfer Vivid Seats does not perform, whose true nature Vivid Seats never disclosed before

[1] A copy of the FAC showing all changes from the original Complaint (ECF No. 2) is attached as **Exhibit B**.

purchase; and (3) adds Count III, which seeks reasonable nominal damages under the 2024 statute providing that, in statutory causes of action created by the Maryland Code to protect consumer rights, "damages" and "losses" "include[] reasonable nominal damages." Md. Code Ann., Gen. Provis. § 1-107.1. The amendment is timely, made in good faith, not prejudicial, and not futile. Leave should be granted.

## I. BACKGROUND

Plaintiff alleges that Vivid Seats used "drip pricing" to sell her two tickets in February 2025. Vivid Seats advertised the tickets at $225 each and then, at a non-initial step of the transaction and under a ten-minute countdown clock, added $186.24 in mandatory fees, including a $2.50 per-ticket "Electronic Transfer" fee. Opinion at 2–3; Compl. ¶¶ 56–58, 89–92. The original Complaint asserted claims under the Maryland Consumer Protection Act ("MCPA"), including for violation of Md. Code Ann., Com. Law § 13-310.1, which, effective July 1, 2024, requires secondary ticket exchanges to disclose the total price of a ticket, including all fees, in the ticket listing and at each step of the transaction, and prohibits increasing the total price at a non-initial step. Opinion at 12, 17.

The Court denied Vivid Seats' motion to compel arbitration, holding its arbitration agreement illusory. *Id.* at 10. It granted the alternative motion to dismiss without prejudice. The Court reasoned that, because Plaintiff "acknowledge[d] that Vivid Seats disclosed the true total ticket price at the final step of the transaction and that, even after seeing the higher price, she chose to complete the purchase anyway," it could not "reasonably infer . . . that Plaintiff would not have purchased the tickets if Vivid Seats had not made the alleged misrepresentations and omissions," and that she therefore failed to allege reliance or an "identifiable loss." *Id.* at 14. The Opinion did not separately address the Transfer Fee. In denying Plaintiff's request for certification of the issue

to the Maryland Supreme Court, the Court also held that "§ 13-408(a) already provides a private right of action for violations of § 13-310.1(b) and (d)." *Id.* at 18. The Court directed Plaintiff to file any motion for leave to amend by October 16, 2026. *Id.* at 19.

## II. THE PROPOSED AMENDMENTS

The FAC makes five categories of changes, each shown in Exhibit B.

*First*, reliance. The FAC alleges the facts the Opinion found lacking. It alleges that consumers compare listings, and compare Vivid Seats' prices with those on other platforms, at the ticket-selection stage, on the basis of the price Vivid Seats displays there (FAC ¶¶ 7, 29, 76). It alleges that Plaintiff began shopping intending to spend no more than about $225 per ticket; that she compared the available listings using their displayed prices; and that she selected the $225 listing, and chose Vivid Seats over other platforms, because of that price (*id.* ¶¶ 100, 104–05). Most importantly, it alleges what she would have done differently: had the $318.12 all-in price been disclosed at the outset, she would not have selected those tickets and "[i]nstead . . . would have selected lower-priced seats whose all-in price was at or around $225." *Id.* ¶¶ 114–15. The FAC also alleges why her completion of the purchase was not an informed choice. The fees appeared only after she had selected her tickets and entered her personal and payment information under a countdown clock and an "Act fast!" admonition. Vivid Seats only disclosed that her tickets were not actually being held only behind an "information" icon she did not see. The fees appeared only in a side column and fine print. And she believed that leaving the checkout to reconsider or comparison-shop would cost her the tickets. *Id.* ¶¶ 61–64, 108–12, 117.

*Second*, objectively identifiable loss. The FAC alleges that Plaintiff paid $186.24 in fees that were not disclosed in the ticket listing or initial step and that Vivid Seats added at a non-initial step in violation of § 13-310.1(b)(3)(i). FAC ¶¶ 118, 179. That is a loss "measured by the amount

the consumer spent." Opinion at 13–14 (quoting *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 270 (D. Md. 2015)).

*Third*, the Transfer Fee. The FAC adds Count IV on behalf of a Transfer Fee Class. Count IV alleges that Vivid Seats charged a per-ticket "Electronic Transfer" or "Mobile Delivery" fee for a transfer it does not perform; Plaintiff's tickets were transferred by the original purchaser through Ticketmaster. It further alleges that the fee was not "the amount of reasonable shipping costs for physically delivered tickets," the only charge § 13-310.1(b)(3)(i) permits to be added at a non-initial step. FAC ¶¶ 3, 88–92, 120–27, 195–208.

*Fourth*, reasonable nominal damages under Md. Code Ann., Gen. Provis. § 1-107.1. The FAC adds Count III on behalf of a Nominal Damages Subclass of Maryland purchasers whose transactions post-date § 1-107.1's October 1, 2024 effective date. Count III seeks reasonable nominal damages for Vivid Seats' uniform violation of their § 13-310.1(b) rights, together with attorneys' fees under § 13-408(b). The FAC pleads nominal damages in addition to, and in the alternative to, actual damages. FAC ¶¶ 16–18, 119, 183–94.

*Fifth*, conforming and supporting changes. The FAC adopts this Court's caption; pleads jurisdiction and venue as asserted in Defendants' Notice of Removal while reserving Plaintiff's rights under 28 U.S.C. § 1447(c) (FAC ¶¶ 23–25); summarizes the Maryland law governing deceptive pricing (*id.* ¶¶ 94–97); alleges that Vivid Seats displayed all-in pricing for events in certain other states, showing that it could have complied with Maryland law (*id.* ¶¶ 12, 180); adds a jury demand under Rule 38; deletes the Maryland Rule 2-305 statement; and corrects typographical errors.

## III. LEGAL STANDARD

A court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This mandate is to be heeded, *Foman v. Davis*, 371 U.S. 178, 182 (1962), and leave "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (*en banc*) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). An amendment is futile when it is "clearly insufficient or frivolous on its face," *Johnson*, 785 F.2d at 510, or would not survive a motion to dismiss under Rule 12(b)(6), *see Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995). In applying that standard, the Court "must accept the allegations as true and draw all reasonable inferences in favor of the pleader." Opinion at 11 (citing *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022)).

## IV. ARGUMENT

### A. The Amendment Is Timely, Made in Good Faith, and Not Prejudicial.

Plaintiff seeks leave within the deadline the Court set. The case remains at the pleading stage; no scheduling order has issued and no discovery has occurred. This is Plaintiff's first amendment and her first pleading prepared under the Federal Rules. The original Complaint was filed in the Circuit Court for Caroline County before removal. The amendments respond to the Opinion and arise from the same transaction and course of conduct alleged in the original Complaint. There is no prejudice, bad faith, or undue delay.

### B. The Amendment Is Not Futile.

#### 1. The FAC plausibly alleges reliance.

Where, as here, the deceptive practice is an omission, "a consumer relies on [that] material omission under the MCPA where it is substantially likely that the consumer would not have made

the choice in question had the commercial entity disclosed the omitted information." Opinion at 12–13 (quoting *Spotswood v. Hertz Corp.*, Civ. No. WMN-16-1200, 2016 WL 6879938, at *8 (D. Md. Nov. 22, 2016)). The Court found the original Complaint deficient because it did not allege that Plaintiff "would have done anything differently" had Vivid Seats disclosed the total price. *Id.* at 13 (quoting *Webb v. Carrington Mortg. Servs. LLC*, Civ. No. SAG-24-1950, 2025 WL 213950, at *12 (D. Md. Jan. 16, 2025)). The FAC now alleges exactly that, and not in the formulaic terms the Fourth Circuit has found insufficient, *cf. Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 380 (4th Cir. 2022). It identifies the choice at issue (selecting the $225 listing on Vivid Seats rather than other listings or platforms); the reason for it (the displayed price, measured against her budget and the prices she had seen elsewhere); and what she would have done instead (selected lower-priced seats whose all-in price was at or around $225). FAC ¶¶ 100, 104–05, 113–15.

That allegation satisfies the standard the Opinion applied. It also satisfies the substantial-inducement standard the Supreme Court of Maryland has articulated for reliance. Under that standard, a plaintiff need not show that a misrepresentation was the sole or "but for" cause of her decision; "it is sufficient that the misrepresentation substantially induced the plaintiff to act." *Nails v. S & R, Inc.*, 334 Md. 398, 416–17 (1994). The same substantial-inducement standard governs reliance under the MCPA. *Braan v. Wells Fargo Home Mortg., Inc.*, Civil Action No. PX-17-0380, 2017 U.S. Dist. LEXIS 122154, at *12 (D. Md. Aug. 3, 2017) ("[D]etrimental reliance is met where the misrepresentation substantially induces the consumer's choice.") (*citing Luskin's, Inc. v. Consumer Prot. Div.*, 353 Md. 335, 358–59 (1999)). The FAC alleges that the $225 price "was a substantial factor in Named Plaintiff Cheezum's decision to purchase the tickets." FAC ¶ 113. As Plaintiff explained in her Motion for Reconsideration, that is the formulation *Nails* adopts. ECF No. 25 at 8–9.

The FAC also addresses the inference the Court drew from the original pleading—that Plaintiff "acted voluntarily in completing the transaction, aware of the higher price charged." Opinion at 14. The FAC acknowledges that Plaintiff noticed, on the final screen, that the total was higher than the advertised price. FAC ¶ 112. But it alleges that by then she had already made the "choice in question" at the ticket-selection stage, before any fee was disclosed. It further alleges that the fees surfaced only in a side column and fine print, and that she reasonably believed, because of the countdown clock and the "Act fast!" admonition, that leaving the checkout to reconsider or comparison-shop would cost her the tickets—while Vivid Seats disclosed only behind an information icon that the tickets were not in fact being held. FAC ¶¶ 61–64, 108–12, 116–17.

On those allegations, Plaintiff's completion of the purchase is at least as consistent with the anchored, pressure-driven decision that drip pricing is designed to produce, FAC ¶¶ 27–33, as with a free and informed choice. Choosing between those inferences is for the factfinder. That is especially true of reliance: "[t]he question becomes one of fact, as to whether substantial weight was given to the representation," and "it usually is for the jury." *Nails*, 334 Md. at 416–17 (quoting William L. Prosser, *The Law of Torts* § 108, at 715 (4th ed. 1971)). Applying that standard, the court held the evidence sufficient for the jury to find that each plaintiff relied on the misrepresentation, even though each, when asked whether he or she would have taken the job had the truth been disclosed, answered that he or she did not know. *Id.* The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses" at the pleading stage. Opinion at 11 (quoting *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020)).

The General Assembly did not merely require that the total price be disclosed at some point before payment. It required disclosure in the ticket listing and "each step of a transaction," and it

separately prohibited any increase in the total price "in a noninitial step of a transaction" other than "the amount of reasonable shipping costs for physically delivered tickets." Md. Code Ann., Com. Law § 13-310.1(b). Every transaction that violates the non-initial-step prohibition will, by definition, disclose the higher total before the consumer pays—otherwise the charge could not be collected at all. If a consumer's completion of a purchase after a final-step disclosure defeated reliance as a matter of law, no consumer could ever recover under § 13-408(a) for a violation of § 13-310.1(b)(3)(i), even though the Court has recognized that § 13-408(a) is the private remedy for exactly such violations. Opinion at 17–18; *see* ECF No. 25 at 5–6. Maryland courts read statutes "as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory." *Town of Forest Heights v. Md.-Nat'l Cap. Park & Plan. Comm'n*, 463 Md. 469, 478 (2019). And under Maryland law, the MCPA violation lies in what the merchant fails to disclose when the consumer makes her choice: "[t]he violation . . . was the omission, before sale, of the disclosure of material facts." *Luskin's*, 353 Md. at 380.

**2. The FAC plausibly alleges an objectively identifiable loss.**

The Opinion described the required injury as "an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance." Opinion at 13–14 (quoting *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 916 A.2d 257, 277 (2007)). The Opinion's conclusion that Plaintiff had alleged no such loss followed from its reliance holding. *Id.* at 14. With reliance adequately pleaded, the loss is apparent: Plaintiff spent $186.24 in mandatory fees that Vivid Seats withheld from the ticket listing and initial step and then added at a non-initial step, an amount § 13-310.1(b)(3)(i) prohibited Vivid Seats from adding in that manner. FAC ¶¶ 118, 179. And had the total price been disclosed, she would have selected lower-priced seats whose all-in price was at or around $225. *Id.* ¶ 115. That is a concrete, quantified, out-of-pocket loss.

### 3. Count IV states an independent claim for the Transfer Fee.

Count IV does not depend on the drip-pricing theory. It alleges that Vivid Seats labeled a per-ticket charge an "Electronic Transfer" or "Mobile Delivery" fee, thereby representing that the charge paid for a delivery service Vivid Seats provided, when in fact electronic tickets resold on Vivid Seats are transferred by the non-party seller through a separate platform—in Plaintiff's case, through Ticketmaster. FAC ¶¶ 88–90, 120–24, 198–200. The original Complaint pleaded this theory, Compl. ¶¶ 81–83, 124(e)–(f), Vivid Seats did not address this theory in the Motion to Dismiss, *see generally* ECF No. 5-1, and the Opinion did not address it, *see* ECF No. 25 at 4–5. Those allegations state a claim under the MCPA's prohibitions on misleading representations that have "the capacity, tendency, or effect of deceiving or misleading consumers," Md. Code Ann., Com. Law § 13-301(1); on representations that consumer services have a "characteristic, . . . use, [or] benefit . . . which they do not have," *id.* § 13-301(2)(i); and on the failure to state a material fact that "deceives or tends to deceive," *id.* § 13-301(3). FAC ¶ 201. For transactions after July 1, 2024, the Transfer Fee was also a *per se* MCPA violation, because § 13-310.1(b)(3)(i) permits only "the amount of reasonable shipping costs for physically delivered tickets" to be added at a non-initial step, and an electronic transfer involves neither shipping nor physical delivery.[2] FAC ¶¶ 92, 202–03.

[2] Respectfully, applying the Opinion's reasoning to the Transfer Fee or Service Fee, would produce a result the General Assembly could not have intended. Section 13-310.1(b)(3)(i) permits only one charge to be added to the total price of a ticket at a non-initial step of the transaction: "the amount of reasonable shipping costs for physically delivered tickets." Any other charge added at that stage is unlawful, however it is disclosed. Plaintiff alleges that Vivid Seats added exactly such a charge: a $5.00 "Electronic Transfer" fee for electronic tickets that a third party transferred to her at no cost to Vivid Seats. FAC ¶¶ 120–27. If the appearance of that fee on the final screen meant that Plaintiff suffered no identifiable loss, Vivid Seats would keep a charge the statute forbids, and no consumer could enforce § 13-310.1(b)(3)(i) through the private right of action the Court recognized in § 13-408(a). Opinion at 17–18. That outcome cannot be reconciled with the General Assembly's stated intent that the MCPA "take strong protective and preventative steps to

The reasoning of the Opinion poses no obstacle to Count IV. That reasoning rested on Vivid Seats' disclosure of the total price before Plaintiff paid. Opinion at 14. The misrepresentation underlying Count IV—what the Transfer Fee was for—was never disclosed or corrected before purchase, and Plaintiff paid the fee understanding from its label that it was a charge for Vivid Seats' delivery of her tickets. FAC ¶¶ 124, 204–05. Maryland's highest court has long recognized that "[a] payment cannot well be said to be made voluntarily when it is made in consequence alone of a false view of the facts." *Brutus 630, LLC v. Town of Bel Air*, 448 Md. 355, 362 (2016) (quoting *Balt. & Susquehanna R.R. Co. v. Faunce*, 6 Gill 68, 77 (1847)). That is what Count IV alleges: Plaintiff paid the Transfer Fee under the false impression, created by its label, that the fee paid for a transfer Vivid Seats would perform. FAC ¶¶ 124, 204–05. Her loss is the $5.00 she paid for a service that was not provided, FAC ¶¶ 127, 206—"an identifiable loss, measured by the amount the consumer spent." Opinion at 13–14 (quoting *Ayres*, 129 F. Supp. 3d at 270).

#### 4. Independently, § 1-107.1 establishes that a violation of a consumer's MCPA rights is a compensable "loss," remediable by reasonable nominal damages.

Count III states a claim for a further, independent reason: Maryland law now expressly defines the "loss" recoverable in a consumer-protection cause of action to include reasonable nominal damages. Section 1-107.1 of the General Provisions Article provides:

> In statutory causes of action created by this Code to protect civil rights or consumer rights, "damages" or "losses": (1) means money claimed by, or ordered to be paid to, a person as compensation for loss or injury resulting from the violation of the person's rights or protections; and (2) includes reasonable nominal damages.

---

investigate unlawful consumer practices, to assist the public in obtaining relief from these practices, and to prevent these practices from occurring in Maryland." *Lloyd*, 916 A.2d at 276 (quoting *Morris v. Osmose Wood Preserving*, 340 Md. 519, 536–37 (1995)); *see* Md. Code Ann., Com. Law § 13-102(b); *see also id.* § 13-105 (directing that the MCPA "be construed and applied liberally to promote its purpose").

Md. Code Ann., Gen. Provis. § 1-107.1 (2024 Md. Laws chs. 883, 884) (effective Oct. 1, 2024).

The statute applies here by its plain terms. *See Clarksville Residents Against Mortuary Def. Fund, Inc. v. Donaldson Props.*, 162 A.3d 929, 942 (Md. 2017) (courts "give effect to the statute as it is written" when its words are clear). Section 13-408(a) is a "statutory cause[] of action created by this Code to protect . . . consumer rights": it authorizes "any person" to "recover for injury or loss sustained by him as the result of a practice prohibited by" the MCPA. Md. Code Ann., Com. Law § 13-408(a). Section 1-107.1 defines "losses," and under Maryland's general rules of construction the plural includes the singular. Md. Code Ann., Gen. Provis. § 1-202. The "loss" for which § 13-408(a) permits recovery therefore "includes reasonable nominal damages," and it is defined as "loss or injury resulting from the violation of the person's rights or protections." Md. Code Ann., Gen. Provis. § 1-107.1. And because § 13-408(b) permits a fee award to a person "who is awarded damages," an award of reasonable nominal damages carries the same fee eligibility. *Id.*; Md. Code Ann., Com. Law § 13-408(b).

Section 1-107.1 was enacted against the settled backdrop of Maryland decisions holding that an MCPA plaintiff must plead and prove actual injury or loss beyond the statutory violation itself. *See Lloyd*, 916 A.2d at 277; *Citaramanis v. Hallowell*, 328 Md. 142 (1992). The General Assembly is presumed to have been aware of those decisions. Its choice to define compensable "loss or injury" by reference to "the violation of the person's rights or protections," and to make reasonable nominal damages available for that loss, reflects a legislative judgment that the invasion of a statutorily conferred consumer right is itself a cognizable injury. The MCPA, moreover, "shall be construed and applied liberally to promote its purpose." Md. Code Ann., Com. Law § 13-105.

Section 13-310.1(b) confers precisely such rights: the right to see the total price, including all fees, and an itemized list of charges in the ticket listing and at each step of the transaction, and

the right to be free from an increase in the total price at a non-initial step. The FAC alleges that Vivid Seats violated those rights in Plaintiff's February 2025 transaction—after § 1-107.1 took effect—and in every transaction of the Nominal Damages Subclass. FAC ¶¶ 119, 189–91. That injury necessarily "result[ed] from" the prohibited practice, because the practice and the deprivation are one and the same. Count III therefore states a claim for reasonable nominal damages regardless of whether any individual consumer would ultimately have purchased different tickets.

That conclusion follows from the source of the reliance and identifiable-loss requirements themselves. Neither requirement is stated in § 13-408(a); both are judicial constructions of its "injury or loss" language. In *Lloyd*, the Supreme Court of Maryland explained that "a private party suing under the Consumer Protection Act must establish 'actual injury or loss,'" grounding that requirement in § 13-408's provision that a person may "recover for injury or loss sustained by him as the result of a practice prohibited by this title." 916 A.2d at 277 (citing *Citaramanis*, 328 Md. at 153–54). From that statutory language, the court derived the rule the Opinion applied here: "the injury must be objectively identifiable. In other words, the consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation." *Id.*

Section 1-107.1 now defines that very "loss." It provides that, in statutory causes of action such as § 13-408(a), "losses" means compensation "for loss or injury resulting from the violation of the person's rights or protections" and "includes reasonable nominal damages." Md. Code Ann., Gen. Provis. § 1-107.1. A requirement that the consumer prove "an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance," *Lloyd*, 916 A.2d at 277, cannot be reconciled with a remedy that was created to provide consumers a mechanism to enforce

the MCPA even in instances where there are no measurable or hard to quantify loss. Because the reliance and identifiable-loss requirements are the means by which courts measured the "loss" that § 13-408(a) requires, and § 1-107.1 now provides that this "loss" includes reasonable nominal damages for the violation of the consumer's rights itself, a consumer who proves that Vivid Seats violated her rights under § 13-310.1 need not also prove reliance or an out-of-pocket loss to recover reasonable nominal damages. In any event, the FAC pleads both reliance and an identifiable loss.

## V. LOCAL RULE 103.6 STATEMENT REGARDING CONSENT

On October 15, 2026, undersigned counsel requested Defendants' consent to this motion. Defendants do not consent.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant leave to file the First Amended Class Action Complaint attached as **Exhibit A** and direct the Clerk to docket it as the operative complaint.

Dated: October 16, 2026

Respectfully submitted,

Z LAW, LLC

/s/ Cory L. Zajdel
Cory L. Zajdel (Fed. Bar No. 28191)
David M. Trojanowski (Fed. Bar No. 19808)
2345 York Road, Suite B-13
Timonium, Maryland 21093
(443) 213-1977
clz@zlawmaryland.com
dmt@zlawmaryland.com

Oren Giskan (*pro hac vice* to be filed)
GISKAN SOLOTAROFF & ANDERSON LLP
1 Rockefeller Plaza, 8th Floor
New York, New York 10020
(212) 847-8315
ogiskan@gslawny.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2026, the foregoing, together with any exhibits and proposed order, was filed through the Court's CM/ECF system, which will send notice of filing to all counsel of record.

/s/ Cory L. Zajdel
*Attorney for Plaintiff*